## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

ANDRES GARCIA,

      Petitioner,

vs.

    01 CV 670 MV/WD
    99 CR 685 MV

UNITED STATES OF AMERICA,

      Respondent.

### MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Petitioner's Motion to Vacate, Set Aside, or Correct Sentence, pursuant to 28 U.S.C. §2255, filed March 12, 2001 **[Doc. No. 1]**. The Court, having considered the motion, briefs, relevant law and being otherwise fully informed, finds that the motion is well-taken and will be **GRANTED.**

### BACKGROUND

Petitioner Andres Garcia has filed a Motion to Vacate, Set Aside, or Correct Sentence, pursuant to 28 U.S.C. §2255. Petitioner claims three separate grounds for relief. Petitioner's first claim is ineffective assistance of counsel, on the basis of his attorney's failure to make objections to his Pre-Sentence Report ("PSR"). Specifically, Probation's criminal history calculation included an assessment of two criminal history points under U.S.S.G. §4A1.1(d), because the instant offense was deemed to have occurred while Defendant was under a criminal justice sentence (*i.e.*, while Petitioner was under supervision for his DWI conviction). Petitioner claims that the instant offense, a conspiracy, terminated prior to the imposition of probation for a subsequent charge of Driving While Intoxicated ("DWI"). These additional two points rendered Petitioner ineligible for the

15

"safety valve," 18 U.S.C. §3553(f). According to Petitioner, if the two additional points had been removed from the PSR prior to sentencing, he would have been eligible for the safety valve which would have reduced his sentence by more than three years. Thus, Petitioner claims that he was materially prejudiced by the ineffective assistance of counsel.[1]

The relevant facts are as follows. Between September 1996 and February 1997, the Drug Enforcement Agency ("DEA") received tips from confidential informants about a conspiracy to distribute drugs. The DEA, through independent investigation, determined that Petitioner and his brother Eduardo Garcia worked with several individuals to ship marijuana across the country in a series of loads over a period of many months. On July 17, 1998, DEA agents apprehended the Garcia brothers' co-defendant, Manuel Alfonso Miramontes, with 213 kilograms of marijuana and 176.5 kilograms of cocaine. On February 19, 1999, Alfredo Mendoza, another co-defendant, was apprehended with 12 kilograms of cocaine.

Subsequent to these events but prior to his arrest for his involvement in the conspiracy, Petitioner was arrested for DWI. Petitioner was placed on one year of probation on March 8, 1999 for this offense. On June 2, 1999, a criminal complaint was filed, charging all members of the conspiracy with, *inter alia*, conspiracy to possess with intent to distribute over five kilograms of cocaine. The dates of conspiracy were alleged to have been from January 1996 to the date of the complaint, June 2, 1999. On June 3, 1999, the DEA executed a warrant on Petitioner's brother's home, during which the following items were found:  packing materials, grease for coating

---

[1] Petitioner also claims that the government breached the plea agreement by failing to stipulate to the application of the safety valve at sentencing and that his plea was not voluntary due to ineffectiveness of his counsel and prosecutorial assurances that he would be eligible for the safety valve. Because the Court resolves this matter on Petitioner's ineffective assistance claim, the remaining claims need not be addressed.

2

marijuana, business cards and phone numbers relating to a drug deal in Massachusetts, $4,800 in cash and a scale. Agents also went to Petitioner's home. Petitioner consented to a search of his home. That search uncovered one gram of cocaine, $1,000 in cash and false identification. On June 16, 1999, a one-count Indictment was returned, charging conspiracy to possess with intent to distribute five kilograms or more of cocaine and possession with intent to distribute 100 kilograms and more of marijuana. The Indictment places the dates of the conspiracy from January 1996 to the date of the Indictment, June 16, 1999.

On November 3, 1999, Petitioner pleaded guilty to the Indictment before United States District Judge Bruce Black. The plea agreement stipulated that, "[p]rovided that the Defendant meets the requirements of 18 U.S.C. §3553(f), the defendant is entitled to a reduction of two levels from the base offense level." At the time of this agreement, all parties were fully aware of Petitioner's complete criminal history. In an affidavit, Petitioner stated that, at the time the plea agreement was signed, his understanding was that he was eligible for the safety valve so long as he participated in the debriefing required by §3553(f).

On June 13, 2000, Petitioner was sentenced before United States District Judge John Conway. The defense attorney recently had been appointed to the case and had not represented Petitioner during his plea negotiations. At sentencing, Petitioner appeared surprised at the length of his sentence. He expressed disbelief that he was ineligible for the safety valve. Judge Conway sought clarification on the matter. The transcript, however, shows that neither the government's attorney nor Petitioner's attorney had a full understanding of the underlying facts of this case or the application of §4A1.1(d) and §3553(f). Petitioner himself attempted to explain the situation to the Court, but was interrupted by his attorney:

3

THE DEFENDANT: Well, I got a question for Your Honor.

THE COURT: Sure.

THE DEFENDANT: It's because I wasn't    when — *when they seized the drugs, I was not on probation.* When they arrested me I was — still go with -- after they arrest me — [emphasis added.]

MR. CORONADO: Your Honor, in other words what he's saying is when he first — there was [sic] plea negotiations before I entered the picture. There was — he had not yet been charged and violated on probation, they just seized the drugs.  And so when the United States made representations about low-end sentencing at 11-14, it was based upon a belief or upon what his record was at that time.  And part of the plea agreement, as the Court notes, indicates that you run the risk that your guideline sentence may be higher or lower based upon your criminal history. Unfortunately, for Mr. Garcia, what happened is that he was violated before he was arrested on this case, and as a result of that his guideline sentence increased.  So rather than be at a 11-14, it's a little bit higher.

THE COURT: I'm not certain I totally understand all that.  How about it, Ms. Burnham, can you explain it to me?

MS. BURNHAM: Well, Your Honor, I'm not certain I understand it either.

MR. CORONADO: And, Your Honor, I'm batting cleanup, so I don't have the benefit of all the history.

Record at pp. 7-8.

Judge Conway was not satisfied with this information and vacated the sentencing to allow counsel time to determine the full history of Petitioner's case and its relevance to the sentencing hearing.  The parties returned before Judge Conway later that day.  Review of the transcript of the reconvened hearing reveals that defense counsel convinced Petitioner that he was ineligible for the safety valve and that he should proceed to sentencing. It appears that this decision was made because Judge Conway earlier had represented that while he was not going to give the safety valve,[2] he *was*

_____

[2] It appears from the record that Judge Conway made the determination that the safety valve was inapplicable after defense counsel presented an inaccurate factual history of the case.

4

willing to decrease the criminal history due to over-representation.

Judge Conway departed to criminal history category I on the basis of over-representation. With an offense level of 35, the guideline range was 168 to 210 months. Defendant requested and received a sentence at the low end of the guideline range -- 168 months.

Despite the reduction of the criminal history category to category I, Petitioner remained ineligible for the safety valve. The Tenth Circuit has held that when a court departs on criminal history to category I, the defendant does not gain eligibility for the safety valve. Rather, the computation for safety valve purposes is determined by the criminal history points as calculated prior to departure for over-representation. *See U.S. v. Owensby,* 188 F.3d 1244, 1246-47 (10th Cir. 1999). Thus, in order for the safety valve to have applied, Petitioner would have had to have challenged the PSR itself to remove the two criminal history points assessed pursuant to §4A1.1(d).

Petitioner contends that defense counsel's failure to contest the PSR resulted in his ineligibility for the safety valve, which added three years to his sentence. The government and the Magistrate Judge disagree, claiming that the scope of the conspiracy is co-extensive with the dates in the Indictment, making the two criminal history points appropriate under §4A1.1(d).

Petitioner requested a hearing in this matter. "Under 28 U.S.C. § 2255, the district court is required to conduct an evidentiary hearing '[u]nless the motion and files and records of the case conclusively show that the prisoner is entitled to no relief.'" *United States v. Kennedy,* 225 F.3d 1187, 1193 (10th Cir.2000), *cert. denied,* 121 S. Ct. 1406 (citing *United States v. Lopez,* 100 F.3d

---

The government argues that Judge Conway was simply exercising his discretion to not apply the safety valve in this case. However, in light of Judge Conway's stated desire to depart downward and his vacating the hearing to allow a determination of the full history of this case, Judge Conway was not fully convinced of the safety valve's inapplicability until after repeated argument from defense counsel.

113, 119 (10th Cir.1996)). This is not a case in which the motion and files and records conclusively show that Petitioner is entitled to no relief and thus, a hearing was held on June 10, 2002.

## STANDARD

A defendant is entitled to effective assistance of counsel at all stages of representation in court, including sentencing. *See U.S. v. Flores-Ochoa*, 139 F.3d 1022, 1024 (5th Cir.), *cert. denied*, 524 U.S. 959 (1998). To demonstrate ineffective assistance of counsel, a criminal defendant must demonstrate both that his counsel's representation was deficient and that he was prejudiced by counsel's deficient performance. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). The proper standard for attorney performance is "'an objective standard of reasonableness' measured 'under prevailing professional norms.'" *Romano v. Gibson*, 239 F.3d 1156, 1180 (10th Cir.), *cert. denied*, 534 U.S. 1046 (2001) (quoting *Strickland*, 466 U.S. at 688). The "'ultimate focus of inquiry must be on the fundamental fairness' of the challenged proceeding." *Romano*, 239 F.3d at 1180 (quoting *Strickland*, 466 U.S. at 687). "To establish prejudice, [the defendant] must show there is a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Romano*, 239 F.3d at 1180 (quoting *Strickland*, 466 U.S. at 694). Defendant bears the burden of proving ineffective assistance of counsel. The Tenth Circuit has stated that this burden is heavy. *See Ellis v. Oklahoma*, 430 F.2d 1352, 1356 (10th Cir. 1970), *cert. denied*, 401 U.S. 1010 (1971) ("The burden on appellant to establish his claim of ineffective assistance of counsel is heavy. Neither hindsight nor success is the measure for determining adequacy of legal representation.")

6

## DISCUSSION

Petitioner argues that, because the conspiracy ended prior to the onset of his probation, it was improper for Probation to assign him two criminal history points under §4A1.1(d). According to Petitioner, if these two points had been removed from his PSR prior to sentencing, he would have been eligible for the safety valve as stipulated in his plea agreement. Petitioner's evidence that his involvement in the conspiracy terminated prior to his period of probation is set forth in the PSR itself. The PSR does not attribute to him the quantity of cocaine that was recovered from his co-defendant in February 1999. Similarly, the PSR does not attribute to Petitioner any quantity after that date.

### A.    Defense Counsel's Representations to the Sentencing Court

The government characterizes defense counsel's decision to go forward with sentencing as strategic. At the first vacated hearing, Judge Conway shared his intention to depart by two levels, as he believed that three points for a DWI (+1 for the offense, and +2 for the conspiracy occurring while Petitioner was on probation for the DWI) over-represented Petitioner's criminal history. This departure reduced Petitioner's sentence by 20 months, from 188 to 168 months.

While 20 months is certainly a significant departure, the application of the safety valve, with no other departures, would have resulted in a far more significant reduction in Petitioner's sentence. If the safety valve had been applied, Petitioner would have been at an offense level of 33, which, in a criminal history category I, provides a guideline range of 135 to 168 months. As the government had agreed to recommend a sentence at the low end of the guideline range, Petitioner would have received a sentence of 135 months. This is 53 months less than he would have received under the guidelines with the two criminal history points under §4A1.1(d). Therefore, the characterization of

7

defense counsel's choice to opt for a departure rather than for application of the safety valve defies logic.

A review of the record of the sentencing hearing reveals that Judge Conway was convinced by defense counsel that the safety valve was inapplicable. Defense counsel argued that Petitioner was incorrect in his belief that the safety valve applied, stating the following:

> there was [sic] plea negotiations before I entered the picture. There was     he had not yet been charged and violated on probation, they just seized the drugs. And so when the United States made representations about low-end sentencing at 11-14, it was based upon a belief or upon what his record was at that time. And part of the plea agreement, as the Court notes, indicates that you run the risk that your guideline sentence may be higher or lower based upon your criminal history. Unfortunately, for Petitioner, what happened is that he was violated before he was arrested on this case, and as a result of that his guideline sentence increased.

Defense counsel's representation of the facts to Judge Conway was flawed in several critical respects. First, the police had not "just seized the drugs" when they arrested Petitioner. Petitioner was arrested in June of 1999. The government has never argued that Defendant was involved in the distribution of any drugs after February 1999. The Court notes that the PSR attributes no drug amounts to the determination of Petitioner's offense level after July 1998 despite Probation's knowledge of the twelve kilograms of cocaine recovered from Mr. Mendoza in February 1999. This last seizure, which was not attributed to Petitioner in his PSR, pre-dated his DWI arrest and the imposition of probation.

Next, defense counsel represented to Judge Conway that the plea agreement was entered into prior to Petitioner's DWI conviction and subsequent probation. In fact, Petitioner pleaded guilty in November of 1999, after his term of probation had commenced. Since he was not arrested for his involvement in the conspiracy until several months after his DWI, the plea negotiations must have

8

occurred with a full knowledge of his criminal history. Finally, defense counsel made reference to a probation violation at sentencing although no such violation occurred.

In an affidavit, Petitioner stated that he tried to bring this error in the PSR to his attorney's attention. The relevant portion of the PSR is attached to his motion, with his note to his attorney flagging the §4A1.1(d) issue. In addition, the affidavit states that Petitioner repeatedly asked his attorney to schedule a debriefing as required for the safety valve under §3553(f) but that his attorney failed to do so, presumably because he believed that Petitioner was ineligible.

B.    *Temporal Scope of the Conspiracy*

The government and the Magistrate Judge both set forth the position that the conspiracy continued through the time that Petitioner was on probation, making the two criminal history points under §4A1.1(d) proper and making Petitioner ineligible for the safety valve reduction. Petitioner argues that the temporal scope of the conspiracy did not extend into the period of time during which he was on probation. "[A] conspiracy, once instituted, continues to exist until it is abandoned, succeeds, or is otherwise terminated by some affirmative act, such as withdrawal by the defendant." *U.S. v. Russell*, 963 F.2d 1320, 1322 (10th Cir.), *cert. denied*, 506 U.S. 898 (1992). "The time at which the conspiracy ends depends upon the particular facts of the case." *U.S. v. Silverstein*, 737 F.2d 864, 867 (10th Cir. 1984). In the instant case, the Indictment alleges that the conspiracy continued through the probationary period.    Petitioner entered a plea to that Indictment.    The application of §4A1.1(d), however, is not determined simply by reference to the dates in the Indictment.    Rather, it requires an independent analysis of the actual temporal scope of the conspiracy. *See U.S. v. Wilson*, 168 F.3d 916 (6th Cir. 1999); *U.S. v. Edwards*, 115 F.3d 1322 (7th Cir. 1997); *U.S. v. Mitchell*, 31 F.3d 271 (5th Cir.), *cert. denied*, 513 U.S. 977 (1994); *U.S. v.*

9

*Hansley*, 54 F.3d 709 (11th Cir.), 516 U.S. 999 (1995). In *Wilson, Edwards, Mitchell* and *Hansley*, the court looked to the underlying facts to determine the temporal scope of the conspiracy rather than simply relying on the dates in the indictment. In each of these cases, the court found that the conspiracy extended into the period of probation and therefore determined that §4A1.1(d) was properly applied. These cases, however, are all factually distinguishable from the instant case.

In *Wilson*, the defendant admitted to being on probation from January 1993 through January 1995 and to selling drugs in 1994. The defendant did not deny the 1994 drug sale, but simply stated that it was not sufficiently proximate in time to the remaining events in the conspiracy to make it a part of the "instant offense" for purposes of §4A1.1. The Sixth Circuit disagreed, finding that the additional criminal history points were assessed properly. By contrast, in the instant case there is no evidence that, once his probationary period began, Petitioner was involved in the conspiracy to distribute.

*Edwards* upheld the application of §4A1.1(d) where the length of the involvement in a conspiracy was set forth in a co-defendant's testimony. Specifically, the co-defendant had testified that she witnessed the sale of drugs during the time that the defendant was on probation. The defendant attacked her credibility on appeal. The Seventh Circuit made clear that such credibility determinations are not for the appellate court. Similarly, in *Mitchell*, the defendant was on probation from May through November of 1991 and a witness testified that he had purchased drugs from the defendant in "the summer of 1991." Thus, the Court determined that §4A1.1 was properly applied. Unlike *Edwards* and *Mitchell*, in the instant case, there was no testimonial evidence that the conspiracy continued into March 1999 when Petitioner's probation was imposed.

*Hansley* engaged in no analysis of the facts of the underlying conspiracy. The district court

had simply stated that the record reflected that the conspiracy went back to the time of the probation. The Eleventh Circuit found no "clear error" in the district court's determination that §4A1.1(d) was applicable.

"[A] conspiracy terminates either when the last overt act is performed, or when the central aim of the conspiracy had failed or was achieved." *U.S. v. Smith*, 833 F.2d 213, 220 (10th Cir. 1987) (citations omitted). In *Smith*, the defendant argued that the conspiracy was to sell two stolen computers and that the conspiracy ended when the second computer was sold. The government argued that the conspiracy was to sell stolen computers generally and thus, "although the conspiracy was quiescent for three months, it had not terminated." *Id*. The Tenth Circuit determined that "[t]he specific circumstances of the present case support the government's position that the conspiracy's purpose was not limited to acquiring and selling two IBM computers." *Id*. The Tenth Circuit went on to state that, "[w]hen conspiratorial activity takes place for some two months, as is true here, a hiatus of less than three months may support an inference of a breathing spell rather than a termination of the conspiracy." *Id*. at 221.

Under *Smith*, this Court must determine whether Petitioner was involved in a conspiracy to sell drugs *generally*, or whether he was in a conspiracy to sell a specific amount of drugs that was sold no later than March 1999. This Court notes that the amount of drugs that was attributed to Petitioner in the PSR and for which he was sentenced did not include the twelve kilograms recovered from his co-defendant in February 1999 or any amount after that. As the PSR's computation of the amount of drugs attributed to Petitioner does not include any quantities found on or after the date that probation was imposed, this Court finds that the instant offense did not occur while Petitioner was on probation. Therefore, the two points assigned to Petitioner under §4A1.1(d) were assigned

11

in error. Had defense counsel objected to this and made arrangements for the debriefing as Petitioner repeatedly requested, the government would have been bound to honor the stipulation in the plea agreement regarding the application of the safety valve.

## CONCLUSION

Defense counsel's failure to object to the application of §4A1.1 was based entirely on his lack of understanding of the underlying facts. This performance falls short of "'an objective standard of reasonableness' measured 'under prevailing professional norms.'" *Romano*, 239 F.3d at 1180 (10th Cir. 2001) (quoting *Strickland*, 466 U.S. at 688). Petitioner amply has demonstrated prejudice by showing "'there is a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Id.* (quoting *Strickland*, 466 U.S. at 694). Accordingly, this Court finds that defense counsel's representation was deficient and that Petitioner was prejudiced by counsel's deficient performance. *Strickland*, 446 U.S. at 687.

Counsel's failure to object to the miscalculation in the PSR directly prevented Petitioner from benefitting from §3553(f)'s "safety valve." This failure materially prejudiced Petitioner such that he received ineffective assistance of counsel. The Court thus will grant Petitioner's Motion to Vacate, Set Aside, or Correct Sentence.

**IT IS THEREFORE ORDERED** that Petitioner's Motion to Vacate, Set Aside, or Correct Sentence **[Doc. No. 1]** is hereby **GRANTED.** The government is hereby ordered to afford the

12

Petitioner an opportunity to comply with the debriefing requirements of §3553(f) prior to re-sentencing in this case.

Dated this 3rd day of February, 2004.


_____
MARTHA VÁZQUEZ
CHIEF UNITED STATES DISTRICT JUDGE


Attorney for Petitioner:
Mary Stillinger

Attorney for Respondent:
Kelly Burnham